**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL DENT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. 4:18-CV-02054-NCC** |
| **ANDREW M. SAUL,[1]** | ) |
| **Commissioner of Social Security** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Michael Dent ("Plaintiff") for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

Plaintiff has filed a brief in support of the Complaint (Doc. 21) and Defendant has filed a brief in

support of the Answer (Doc. 24). The parties have consented to the jurisdiction of the

undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 12).

## I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on May 2, 2016 (Tr. 172-73). Plaintiff's claim was

initially denied on June 21, 2016 and Plaintiff requested a hearing before an administrative law

judge ("ALJ") (Tr. 99, 109-110). After a hearing, by a decision dated May 31, 2018, the ALJ

found the Plaintiff not disabled (Tr. 13-30). On October 12, 2018, the Appeals Council denied

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner
Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue
this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §
405(g).

Plaintiff's request for review (Tr. 1-3). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, and that Plaintiff has not engaged in substantial gainful activity since September 14, 2015, the amended alleged onset date (Tr. 18). The ALJ found Plaintiff has the severe impairments of degenerative disc disease status post fusion with hardware and obesity but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-21). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] with the following limitations (Tr. 21). He can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently (*Id.*). He can sit for 6 hours, stand for 6 hours, and walk for 6 hours in an 8-hour work day (*Id.*). He can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds (*Id.*). He can frequently balance, and occasionally stoop, kneel, crouch, and crawl (*Id.*). He can never work at unprotected heights or near moving mechanical parts (*Id.*). The ALJ found Plaintiff not capable of performing any past relevant work but that other jobs exist in substantial numbers in the national economy that Plaintiff can perform including packer, assembler, and product inspector

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 416.967(b), 404.1567.

(Tr. 29-30).  Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 30).

Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to

establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step

four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has

done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20

C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the

Commissioner has the burden of production to show evidence of other jobs in the national

economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874

n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The

ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v.*

*Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931

n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377

F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate

RFC remains on the claimant, even when the burden of production shifts to the Commissioner at

step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's

decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v.*

*Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but

is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v.*

*Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record

de novo.  *Id*.  Instead, the district court must simply determine whether the quantity and quality

of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's

conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the factfinder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff asserts that the ALJ failed to properly evaluate his subjective allegations of pain (Doc. 21 at 8).  In evaluating Plaintiff's subjective complaints, [3] the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons,

---

[3] Social Security Ruling 16-3p, 2016 eliminated the term "credibility" from the analysis of subjective complaints.  However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

the Court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

Contrary to the Plaintiff's assertion, the ALJ considered Plaintiff's subjective complaints of pain and found them not credible. *See Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). First, the ALJ reviewed the objective medical evidence of record and determined that it failed to support the severity of the Plaintiff's alleged symptoms. Specifically, the ALJ found that "claimant's statements . . . are inconsistent because the medical evidence does not support the severity of the limitations alleged" (Tr. 22). The ALJ detailed Plaintiff's medical history over nearly six pages and referred to multiple objective measures during the relevant period to explain why she found Plaintiff's physical condition not disabling. Her review included findings of decreased levels of pain and improvement with treatment.

Indeed, upon a thorough and complete review of the record, the Court finds the ALJ's analysis to be supported by substantial evidence. Plaintiff was injured at work when he fell from a ladder in 2014 (Tr. 22, 59, 485, 575). Despite small disc herniations in the lumbar spine at L4-5 and L5-S1, Plaintiff was returned to his job with restrictions shortly after the injury (Tr. 23, 313, 434, 578). Plaintiff sought medical treatment over the course of 2015 to manage his subjective pain, including one instance where his treating physician noted that there were "some inconsistencies between subjective complaints and objective findings" suggesting "the possibility of a non-organic basis for a portion of his ongoing symptoms" (Tr. 23, 635). *See also* Tr. 313 (November 2015 treatment note indicating the Plaintiff was not taking any medication). Plaintiff stopped working in September 2015 (Tr. 51). In January 2016, Plaintiff underwent a preoperative consultation, which noted internal derangement of discs at L4-5 and L5-S1, central stenosis at L4-5 and left lateral recess stenosis at L5-S1 (Tr. 24, 304-05). He underwent a L4-5

and L5-S1 lumbar decompression and arthrodesis on March 7, 2016 (Tr. 24, 319, 325-28, 342).

Plaintiff reported six weeks later during a post-operative consultation that his back pain was gone

and was told that no physical therapy would be required (Tr. 24, 342). In August 2016, Plaintiff

was evaluated again for complaints of left knee and extremity pain, though he had a full range of

motion (Tr. 25, 746). An MRI was normal despite a Plaintiff's claims of pain reaching a 6-7 on

a scale of 10 (Tr. 25, 434-36, 750). By September 2016, he was lifting 187 pounds on a chest

press and 100 pounds on the rowing machine for three sets of 15 reps (Tr. 24, 683). At an

October consultation, Plaintiff reported that his back pain had improved from surgery and he had

no pain in his right leg, though his left knee was in severe pain (Tr. 25, 436). His doctor

indicated that his knee pain was unrelated to his spinal injury (*Id.*).

An orthopedist in December 2016 found Plaintiff suffered with mild back pain, but the

orthopedist had "no good explanation" for Plaintiff's leg symptoms, even with "good quality

MRI and CT" (Tr. 25, 736-38). Later in December 2016, Plaintiff described himself as "rough"

to a treating physician with claims of back pain, headache, left leg pain, and tingling in the big

toe (Tr. 26, 437). Plaintiff stated that he couldn't walk a single step without his left lower

extremity hurting, though the physician again "found no explanation for the left lower extremity

complaints" (*Id.*). Plaintiff was next seen for pain symptoms after a fall in April 2017, at which

time he showed no tenderness in his extremities (Tr. 26, 354). At his next visit, in November

2017, despite claiming that his pain had reached "intolerable levels," two separate x-rays showed

that the hardware from surgery was functioning properly and there was no significant disc bulge

or arthopathy (Tr. 26, 384, 388, 753). Taking the medical evidence as a whole, ALJ found that

"following the claimant's surgery, [he] improved with no complaints of back pain" and

additionally, "the treatment records consistently indicated that the [leg pain] was unrelated to his

spinal surgery" and "no testing confirmed any radiculopathy or showed any evidence to support the lower extremity complaints" (Tr. 27-28). An ALJ may find that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales*, 465 F.3d at 895. To the extent Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Thus, the ALJ's review of the objective medical evidence and determination that it failed to support the severity of the Plaintiff's alleged symptoms is supported by substantial evidence for the reasons set forth above. *See Pearsall*, 274 F.3d at 1218 ("Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.").

Second, the ALJ properly found that Plaintiff's limited treatment and prescription medication regimen helped control Plaintiff's conditions. Specifically, Plaintiff improved following the initial injury with physical therapy and medication management, enough to return to work for almost a year (Tr. 23, 51, 313). Nearly a year later, Plaintiff returned to treatment for his pain and was again prescribed medication (Tr. 23, 313). Although Plaintiff ultimately required back surgery, following his back surgery, he was "ambulating without difficulty," walking three miles a day, and reporting no back pain at all (Tr. 24, 303, 342). Throughout 2016, Plaintiff continued to recover from his surgery and stated that he was better than before it (Tr. 26, 434-37). Even following various subjective complaints and doctor visits in 2017, Plaintiff continued to report that he was "absolutely better" than he was prior to his spine surgery and used medication management and physical therapy to address the continued complaints of pain (Tr. 27, 354, 759). Indeed, examinations from 2017 indicate normal findings including a

nontender back and stable and steady gait (Tr. 354-355, 753, 759). Of note, Plaintiff testified

that he does not use a cane, walker, wheelchair or brace (Tr. 67). *See Julin v. Colvin*, 826 F.3d

1082, 1087 (8th Cir. 2016) (evidence of relief from medication supports ALJ's findings that

complaints were not fully credible); *Renstrom v. Astrue,* 680 F.3d 1057, 1066 (8th Cir. 2012)

(conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578

F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do

not support a finding of disability."); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009); *Schultz

v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Guilliams v. Barnhar*t, 393 F.3d 798, 802 (8th Cir.

2005) ("Evidence of effective medication resulting in relief . . . may diminish the credibility of a

claimant's complaints."); *Wildman*, 596 F.3d 959, 965 n.3 (8th Cir. 2010) (ALJ may properly

consider that pain is "fairly," though not completely, under control when the plaintiff is

compliant with medication).

Third, the ALJ reasonably determined that Plaintiff did not always comply with

suggested treatment and "was not truthful with treatment providers" (Tr. 28). The ALJ noted

that Plaintiff's subjective complaints would differ between providers (Tr. 28). She also indicated

that he falsely stated that he had participated in a nicotine draw when he had not done so (Tr. 28,

440). Additionally, Plaintiff was not honest about his nicotine use in general, a factor that he

was told several times would create complications with his surgery (Tr. 28, 434). For example,

as noted by the ALJ, on November 24, 2015, Plaintiff stated that he smoked an electronic

cigarette that contained no nicotine (Tr. 24, 310). He previously stated that he quit smoking

tobacco cigarettes and that this was all that he smoked (Tr. 313). However, a nicotine test taken

on December 30, 2015 showed high levels of nicotine, "elevated even for active tobacco users"

(Tr. 24, 306). Plaintiff again, on January 21, 2016, told his physician that he had stopped

9

smoking completely and was wearing only a nicotine patch (Tr. 24, 306). He was told that

nicotine use would contribute to a significant risk factor for non-union of the fusion (Tr. 24,

304). He stated in both August and October of 2016 that he had not resumed smoking (Tr. 25,

444, 446). However, he did not go to the laboratory to have the test done in October 2016 and

refused another in December of that year (Tr. 25, 439-440). Additionally, Plaintiff stated to

another medical professional in November 2017 that he was a "never smoker" (Tr. 26, 785).

"Failure to follow [a] recommended course of treatment weighs against a claimant's credibility."

*Guilliams*, 393 F.3d at 802 (citing *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001)); *Wildman*,

596 F.3d at 968-69 (it is permissible for ALJ to consider claimant's non-compliance with

prescribed medical treatment); *Julin* 826 F.3d at 1087 ("Contradictory statements that [the

plaintiff] made to treating physicians are yet another reason to discount [his] credibility").

Fourth, the ALJ found inconsistencies between Plaintiff's subjective complaints of

disabling pain and evidence concerning his activities of daily living. For example, as indicated

in the record and discussed by the ALJ, Plaintiff is able to walk three miles per day, lift up to 187

pounds, do laundry, shave, bathe, brush his teeth, watch Netflix, drive, and interact with family

(Tr. 19, 22, 24, 27-28, 72-73, 260-67, 793, 800). *See Thomas v. Berryhill* 881 F.3d 672, 676 (8th

Cir. 2018) (daily activities and ability to do them conflicted with allegations of disability).

In conclusion, the Court finds the ALJ evaluation of Plaintiff's subjective complaints,

including those of pain, is based on substantial evidence and is consistent with Regulations and

case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as

a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED,** and

Plaintiff's Complaint is **DISMISSED with prejudice.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 5th day of March, 2020.

                                             /s/ Noelle C. Collins
                                             NOELLE C. COLLINS
                                             UNITED STATES MAGISTRATE JUDGE